IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PATRICK EDWARD SMRZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CV07-340-S-EJL |
| vs. | ) | |
| | ) | **MEMORANDUM DECISION** |
| | **)** | **AND ORDER** |
| CORRECTIONAL MEDICAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pending before the Court in the above-entitled matter is Defendant Correctinal Medial Services, Inc.'s ("CMS") Motion to Dismiss and Motion for Summary Judgment (Docket No. 28). Because affidavits have been filed and the Court is considering the entire record instead of just the allegations of the Plaintiff in the Amended Complaint, the Court must treat the motion as a motion for summary judgment. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**MEMORANDUM DECISION AND ORDER-1**

## BACKGROUND

Plaintiff Patrick Smrz ("Mr. Smrz") is an inmate in the custody of the Idaho Department of Correction ("IDOC"). He is presently incarcerated at the Idaho State Correctional Institution ("ISCI"). Plaintiff alleges that Defendant CMS violated his Eighth Amendment rights through the delay in treating his facial skin cancer and not sending him to a plastic surgeon. CMS is a private corporation which is under contract to provide medical services to inmates in the custody of certain Idaho Department of Corrections facilities since July 2005. CMS denies the allegations and seeks dismissal of the Plaintiff's claims.

The medical records submitted establish the time line of both the medical complaints and treatment of Mr. Smrz. It is undisputed that late August 2005, Plaintiff completed a Health Services Request Co-pay form where he complained of a sore on his face that kept bleeding, would not heal and was getting larger. After failing to show for earlier scheduled appointments, Mr. Smrz was referred on August 31, 2005 to a physician's assistant or medical doctor. On September 8, 2005, Physician Assistant Thomas Hengst ("PA Hengst") examined Plaintiff and determined that Mr. Smrz probably had basal cell carcinoma and scheduled him for a biopsy. On October 5, 2005 the biopsy was performed by Physician Assistant David Tomey ("PA Tomey"). The pathology report was received on October 24, 2005 confirmed the biopsy tested positive for basal cell carcinoma. It is unclear why the report was not received until October 24, 2005 when the report is dated October 5, 2005.

**MEMORANDUM DECISION AND ORDER-2**

The pathology report was reviewed and the comments by "Kathy" on the CMS OP Review Communication Form dated October 28, 2005 were that additional information was necessary to see if a dermatologist, ENT (ear, nose and throat doctor) or a plastic surgeon should see Plaintiff.  On October 28, 2005, the reviewer, PA Tomey, indicated that since the skin cancer was on Mr. Smrz's face, a "plastic surgeon would be most desirable."

CMS scheduled Plaintiff for a consultation appointment with ear, nose and throat specialist and surgeon Matthew Schwarz, M.D. (Dr. Schwarz).  Dr. Schwarz had an initial consultation with Mr. Smrz on December 28, 2005.  Dr. Schwarz' consultation letter was dated December 28, 2005 and recommended excision and reconstruction to remove the skin cancer.  The consultation letter does not indicate that the surgery was needed immediately, but on a non-emergent basis.

Plaintiff alleges he should have been seen by a plastic surgeon instead of an ear, nose and throat specialist.  Plaintiff also alleges he should have been seen by an oncologist since he had skin cancer.

On February, 22, 2006, the consultation letter was reviewed by Ellen Kemper, M.D. (Dr. Kemper).  It is unclear from the record if any other medical professional or CMS employee reviewed Dr. Schwarz's consultation letter prior to Dr. Kemper's review.  Dr. Kemper noted that Plaintiff was "overdue" for excision of skin cancer on her medical notes dated February 22, 2006.  After Dr. Kemper's review, the surgery was scheduled for April 3, 2006.  By the time the surgery was performed, the area of the skin cancer had

**MEMORANDUM DECISION AND ORDER-3**

grown.

Using a local anesthesia, Dr. Schwarz performed a wide local excision and flap reconstruction on Mr. Smrz' right cheek in order to remove the basal cell carcinoma. Mr. Smrz was initially given Tylenol 3 and Keflex. Mr. Smrz complained of nausea and he was then prescribed Phenrgan for nausea and Vicodin for pain. When Plaintiff complained of pain and asked for Vicodin, the prison pharmacy said they were out of Vicodin and gave Plaintiff Tylenol. The Vicodin prescription was renewed on April 9 and 11, 2006.

On April 12, 2006, Physician Assistant Lisa Rosetti ("PA Rosetti") removed the sutures from Mr. Smrz' cheek without incident. On May 2, 2006, PA Rosetti again saw Mr. Smrz for another follow up after the surgery and noted the incision was healing well.

Pursuant to Dr. Kemper's notes on February 22, 2006, Mr. Smrz complained his vision was being affected by the skin cancer. Mr. Smrz was then scheduled for an eye exam. On April 14, 2006, Dr. Lawrence Anderson ("Dr. Anderson"), an ophthalmologist, examined Mr. Smrz's vision and determined he had a refraction error due to presbyopia, not the skin cancer. Dr. Anderson prescribed glasses for Mr. Smrz.

On May 2, 2006, Mr. Smrz was seen by Dr. Schwarz for a follow up regarding the surgery on his cheek. Dr. Schwarz' exam revealed that the scar was healing nicely and there was nice symmetry between the two sides. Dr. Schwarz further noted that there was no evidence of recurrence of the skin cancer.

On November 6, 2006, Klint Stander, M.D. ("Dr. Stander") examined Plaintiff and

**MEMORANDUM DECISION AND ORDER-4**

observed the scars were well healed and there was no recurrent skin cancer.

## STANDARD OF REVIEW

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), cert denied, 517 U.S. 1190 (1996).  The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; see also, Fed. R. Civ. P. 56(e) ( "When a motion for summary

**MEMORANDUM DECISION AND ORDER-5**

judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party ." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(e). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

## ANALYSIS

Plaintiff's 42 U. S. C. § 1983 claim is that CMS delayed his treatment causing further medical damage and disfigurement and that he should have been seen by a plastic surgeon instead of the ear, nose and throat surgeon.  Specifically, Plaintiff claims the one month delay between the determination a biopsy was necessary (September 8, 2005) and the biopsy (October 5, 2005) was unreasonable; the delay from the pathology report preparation until it was received (October 24, 2005) and ultimately reviewed by CMS (October 28, 2005) was unreasonable: and the delay from December 28, 2005 when the

**MEMORANDUM DECISION AND ORDER-6**

recommendation was made for surgery until the surgery date on April 3, 2006 was unreasonable, Plaintiff claims all these delays caused his skin cancer condition to worsen dramatically which resulted in more damage to his face.  Defendant CMS claims summary judgment should be granted in its favor because the Plaintiff has not established that CMS was "deliberately indifferent" to the Mr. Smrz' medical needs and even if there was some negligence on the part of the Defendant (which Defendant does not admit) such negligence does not rise to "deliberate indifference" and the Plaintiff's claims must be dismissed as a matter of law.

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976).  In the Ninth Circuit, the test for deliberate indifference consists of two parts. *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir.1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* at 1059 (*citing Estelle*, 429 U.S. at 104). Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. *Id.* at 1060. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.* Indifference "may appear when prison officials deny, delay or intentionally interfere with

**MEMORANDUM DECISION AND ORDER-7**

medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* at 1059 (quoting *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir.1988)). Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. *Id.* (*citing Estelle*, 429 U.S. at 105). A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. *Id.* at 1060. If the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." *Id.* (citations omitted).

Further, to demonstrate deliberate indifference, a prisoner must allege facts sufficient to indicate a culpable state of mind on the part of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  The deliberate indifference standard is a higher standard than gross negligence. *Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir. 1989). Mere indifference, medical malpractice or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab.*, 622 F.2d 458, 460 (9th Cir. 1980).

In this case, it is undisputed that the first prong of the test is satisfied since Plaintiff had a "serious medical need" in the form of a sore on his face that would not heal and was later determined to be basal cell carcinoma.  Having found a serious medical need, the Court must now determine if CMS was "deliberately indifferent" in its response to the medical need.  As stated above this is a two part evaluation:  (a) a purposeful act or

**MEMORANDUM DECISION AND ORDER-8**

failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  For purposes of summary judgment the Court will assume the harm element of subsection (b) has been established since it appears undisputed that the skin cancer grew from the date Mr. Smrz was first seen to the date he received surgery.  Therefore, the Court will focus on whether the actions of CMS were "a purposeful act or failure to respond to a prisoner's pain or possible medical need."

In this case, the record reflects there were short delays between the initial appointments and the biopsy and the evaluation of the pathology report on the biopsy. However, the delays referenced by the Plaintiff are only a matter of days and are expected delays when laboratory results need to be compiled and reviewed before a course of action can be determined.  Moreover, once the pathology report was received it was reviewed within four days by CMS officials.  These minimal and arguably normal delays simply do not rise to the level of deliberate indifference.

As to the three month delay between the surgeon consultation and the surgery date, the Court finds there is no evidence to suggest that the delay was a purposeful act or a failure to respond to the prisoner's medical need.  Dr. Schwarz' notes do not indicate that the surgery needed to be completed in an emergency manner, rather the notes reflect that the surgery was needed on a non-emergent basis.  Once the delay was brought to the attention of Dr. Kemper in late February, the surgery was scheduled in a timely manner. Again, this delay, although real, does not indicate indifference on the part of CMS to getting the surgery Mr. Smrz needed.  While it is possible the delay in receiving surgery

**MEMORANDUM DECISION AND ORDER-9**

may rise to the level of negligence on the part of CMS, the delay in surgery has not been shown to be due to deliberate indifference on the part of CMS and was not medical malpractice since the surgery was needed on a non-emergent basis. See Affidavit of April Dawson, M.D. ("Dr. Dawson"), Docket No. 28-3.

There are simply no records to indicate that CMS was purposefully delaying the surgery to increase the harm and pain to Plaintiff. The delay in surgery appears to be an "isolated" incident in the treatment of Mr. Smrz's skin cancer. The nature of this isolated incident does not rise to the level of deliberate indifference. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th cir. 1990); *Toussaint v. McCarthy*, 801 F.2d 1080,1111, (9th cir. 1986).

Plaintiff's complaints about the surgeon selected are without merit. While it is true that PA Tomey "suggested" a plastic surgeon, there is no evidence before the Court that Dr. Schwarz was not qualified to perform the excision and reconstruction. Dr. Schwarz is a licensed medical doctor who is both a ear, nose and throat specialist and a surgeon. Plaintiff's mere assertion that a plastic surgeon should have performed the surgery is insufficient to establish a genuine issue of material fact regarding the medical care he received. Plaintiff has provided no medical evidence that Dr. Schwarz was not competent or committed malpractice regarding the excision and reconstruction procedure. Moreover, even if there had been malpractice by any of the treating medical professions, malpractice does not establish deliberate indifference on the part of the Defendant. *Broughton v. Cutter Lab.*, 622 F.2d 458, 460 (9th Cir. 1980). Finally, a prisoner's disagreement

**MEMORANDUM DECISION AND ORDER-10**

regarding the treatment received does not establish deliberate indifference.  *Clemens v. State*, 733 P.2d 1263, 1264, 65 (Idaho App. 1987).

As to Plaintiff's allegation that he should have been seen by an oncologist, this claim is without medical support.  The medical records do not indicate that any PA or doctor believed follow-up with an oncologist was necessary or required.  Furthermore, it was determined that there was no recurrent basal cell carcinoma after the surgery so there was no need for an evaluation by an oncologist.

In sum, the Plaintiff has raised complaints regarding the delays in the treatment of his skin cancer, however, there is no evidence that the delays complained of are a result of deliberate indifference on the part of CMS.  The undisputed facts may arguably establish some negligence on the part of CMS in timely scheduling the surgery, but as a matter of law, CMS's alleged negligence scheduling non-emergency surgery for three months later does not establish the "deliberate indifference."   Nor has Plaintiff established any evidence of a "deliberate indifference" state of mind requirement on the part of any treating medical providers or CMS.  Finally, Plaintiff's disagreement as to the type of doctor or course of treatment for his skin cancer does not establish deliberate indifference on the part of CMS as Plaintiff is not medically qualified to raise such a disagreement and the treatment received appears to have eliminated the skin cancer from Plaintiff's face.  Further, there is undisputed medical evidence that the course of treatment received was medically appropriate for Mr. Smrz' condition and that Mr. Smrz' skin cancer has not reoccurred.   For all of these reasons, the Court finds that Defendant CMS is entitled to

**MEMORANDUM DECISION AND ORDER-11**

summary judgment as the undisputed facts establish CMS did not deny medical care nor did CMS act with deliberate indifference to the medical needs of Plaintiff. There are no genuine issues of material fact that exist to prevent the Court from finding as a matter of law there has been no Eighth Amendment violation and the case must be dismissed.

## ORDER

Being fully advised in the premises, the Court hereby orders that Defendants' Motion to Dismiss and for Summary Judgment (Docket No. 28) is GRANTED and the case is dismissed in its entirety.

Plaintiff has also requested to reduce the percentage of his income which is withheld to pay the filing fees for this lawsuit and other lawsuits (Docket No. 36). The Court has reviewed the record and finds that only minimal amounts are being withheld for payment of the filing fee and the Plaintiff elected to file the lawsuit, so he must pay the filing fee as income is earned. The balance owed is $342.35 as the last payment in March 2009. The Court DENIES the requested reduction (Docket No. 36).

DATED: **August 20, 2009**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER-12**